UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

CHARLES DOTSON,

    Plaintiff,

v.                                                                    CASE NO.:

ALLY FINANCIAL, INC.,

    Defendant.
    _____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, Charles Dotson (hereinafter "Plaintiff"), by and through the undersigned counsel, and sues Defendant, Ally Financial, Inc. (hereinafter "Defendant"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

1.    The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and to prevent abusive "robo-calls."

2.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3.    "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991).  Senator Hollings presumably intended to give telephone subscribers another option: telling the auto-dialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls are far and away the biggest consumer complaint to the FCC with over 200,000 complaints each year – around 60 percent of all the complaints…Some private analyses estimate that U.S. consumers received approximately 2.4 billion robo-calls per month in 2016." https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing

## JURISDICTION AND VENUE

5. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7. The alleged violations described herein occurred in Fayette County, Tennessee. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

8. Plaintiff is a natural person, and citizen of the State of Tennessee, residing in Fayette County, Tennessee.

9. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Defendant is a foreign for-profit corporation with its principal place of business located at 500 Woodward Ave., Floor 10, Detroit, MI 48226-3423, and which conducts business in the State of Tennessee through its registered agent, CT Corporation System, located at 300 Montvue Road, Knoxville, Tennessee 37919-5546.

11. Defendant has called Plaintiff approximately one hundred (100) times in an attempt to collect a debt without Plaintiff's prior express consent.

12. Upon information and belief, some or all of the calls Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer)[1] or an artificial or pre-recorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "auto-dialer calls").

13. Plaintiff will testify that he knew that Defendant used an auto-dialer to call him because of the vast number of calls he received, and because when he would answer a call he would be met with a three to five second pause before a live agent/representative would come on the line.

14. Plaintiff believes the calls were made using equipment which has the capacity to store numbers to be called and to dial such numbers automatically.

15. The auto-dialed calls from Defendant were initiated from various phone numbers including, but not limited to: (855) 599-5575 and (888) 611-6904; and when those numbers are dialed, an artificial voice answers and identifies the number as belonging to Defendant.

16. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (901) ***-3138 and was the called party and recipient of Defendant's calls.

---

[1] *See e.g., Ammons v. Ally Fin., Inc.*, 326 F. Supp. 3d 578 (M.D. Tenn. 2018).

17. Defendant placed an exorbitant number of automated calls to Plaintiff's cellular telephone number (901) ***-3138 in an attempt to collect an alleged debt related to an auto loan.

18. On several occasions since the Defendant began bombarding Plaintiff's aforementioned cellular telephone with automated calls, Plaintiff instructed Defendant's agent(s) to stop calling his cellular telephone.

19. On or around March 8, 2019, Plaintiff answered a call from Defendant, was met with an extended pause, was eventually connected to a live agent/representative of Defendant, informed the agent/representative that his vehicle was totaled in January of 2019, the remaining balance owed should be covered by his insurance, and demanded Defendant cease placing automated calls to his aforementioned cellular telephone number.

20. Despite this clear and unequivocal request for Defendant to stop calling, Defendant ignored Plaintiff's requested and continued to bombard Claimant's cellular telephone with automated calls without his express consent.

21. Due to these continued calls, Plaintiff answered another call form Defendant on or about March 27, 2019, was met with an extended pause, was eventually connected to a live agent/representative of Defendant, explained again to the agent/representative that the debt they are attempting to collect on should have been covered by insurance, and again demanded that Defendant cease placing calls to his aforementioned cellular telephone number.

22. Similarly, on or about April 8, 2019, due to the continued automated calls, Plaintiff answered another call from Defendant, was met with an extended pause, was eventually connected to a live agent/representative of Defendant, informed the agent/representative that the vehicle should have been paid off and again demanded that Defendant "please stop calling".

23. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

24. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant, to remove the number.

25. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant that they do not wish to be called.

26. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

27. Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

28. Defendant has had numerous complaints against it from consumers across the country asking to not be called; however, Defendant continues to call these individuals.

29. Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendant's call list.

30. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

31. Not one of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

32. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

33. From each and every call placed without express consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

34. From each and every call without express consent placed by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular telephone by unwelcome calls, making the cellular telephone unavailable for legitimate callers or outgoing calls while the cellular telephone was ringing from Defendant's calls.

35. From each and every call placed without express consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the cellular telephone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

36. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the cellular telephone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

37. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

38. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone where a voice message was left which occupied space in Plaintiff's cellular telephone or network.

39. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular telephone and his cellular telephone services.

40. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, anxiety, nervousness, embarrassment, and aggravation.

## COUNT I
**(Violation of the TCPA)**

41. Plaintiff fully incorporates and re-alleges paragraphs one (1) through forty (40) as if fully set forth herein.

42. Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff wished for the calls to stop.

43. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or pre-recorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Ally Financial, Inc., for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ Frank H. Kerney, III*
Frank H. Kerney, III, Esquire
BPR#: 035859
Morgan & Morgan, PA
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 225-5505
Facsimile:  (813) 222-2490
FKerney@ForThePeople.com
SHill@ForThePeople.com
ACaputo@ForThePeople.com

*Counsel for Plaintiff*