**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| **CHARLES DOTSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 2:19-cv-2274** |
| ) | |
| **ALLY FINANCIAL INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**ORDER**

Plaintiff Charles Dotson alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. ("TCPA"). (ECF No. 1.) Before the Court is Dotson's Motion to Dismiss Counterclaim filed on June 17, 2019. (ECF No. 14.) Defendant Ally Financial Inc. ("Ally") filed a response on July 15, 2019. (ECF No. 18.)

For the following reasons, Dotson's Motion is GRANTED. Ally's counterclaims are DISMISSED.

**I.   Facts**

On November 23, 2018, Dotson entered into a Retail Installment Sale Contract (the "Contract") with Gossett Motor Cars Inc. to purchase a 2017 Volkswagen Passat (the "Vehicle").[1]

---

[1] The facts are drawn from Dotson's Complaint and Ally's Answer/Counterclaim. (ECF Nos. 1, 13.) Because the motion before the Court is a facial attack on the Court's subject matter jurisdiction, the Court takes the allegations in

(ECF No. 13 at 42, 46-48.)[2]  The Contract was later assigned to Ally.  (Id. at 42.)

A consent clause in the Contract allows the lienholder to contact the buyer on his "cell phone" using "prerecorded/artificial voice messages" and "automatic telephone dialing systems."  (See ECF No. 13-1 at 47)("You agree that we may try to contact you in writing, by email, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.").  Dotson signed the Contract and initialed the page with this clause.  (See id. at 47-48.)

At an unspecified time after entering into the Contract, Dotson defaulted under the terms of the Contract for failure to make timely payments.  (See ECF No. 13 at 42-44.)  There is a deficient balance of $14,560.94 plus interest under the terms of the Contract.  (See id.)

---

Ally's Counterclaim as true.  See infra, at 4-5; United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994)(when considering facial attacks, "the court must take the material allegations of the [counterclaim] as true and construe[] [them] in the light most favorable to the nonmoving party").

[2] Unless otherwise noted, all pin cites for record citations are to the "PageID" page number.

Dotson alleges that telephone numbers associated with Ally have called his personal cellular number approximately 100 times in attempts to collect the deficient balance. (ECF No. 1 at 3-4.) Dotson alleges that some or all of those calls used an automatic telephone dialing system, a random or sequential number generator, or a prerecorded or artificial voice. (ECF No. 1 at 3.) On one call, Dotson allegedly informed an Ally agent that the Vehicle was "totaled" in January 2019. (Id. at 4.) Dotson alleges that his insurance is responsible for the remaining balance. (Id.) On one or multiple of the calls, Dotson instructed Ally to stop calling his cellular telephone number. (Id.) Numbers associated with Ally continued to call Dotson's cellular telephone after he asked not to be called. (Id.)

## II. Procedural Background

On April 30, 2019, Dotson filed a complaint against Ally alleging violations of the TCPA. (ECF No. 1.) The TCPA prohibits any person, absent the prior express consent of a telephone call recipient, from "mak[ing] any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a paging service [or] cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Dotson alleges that Ally violated the TCPA by using an automatic telephone dialing

3

system or a prerecorded or artificial voice to place nonemergency telephone calls to his cellular device after he expressly revoked his consent to being called. (See ECF No. 1 at 3-4.)

On June 6, 2019, Ally filed an answer with affirmative defenses to Dodson's complaint and asserted two counterclaims (the "Counterclaims"). (ECF No. 13.) Ally's Counterclaims assert two causes of action under Tennessee law: breach of contract and detinue/repossession. (See id. at 42-45.)

On June 17, 2019, Dotson filed the present motion to dismiss, arguing that the Court lacks subject matter jurisdiction over the Counterclaims. (See ECF No. 14 at 696.) Neither party contests this Court's jurisdiction over Dodson's TCPA claim. (See ECF No. 14 at 52; No. 18 at 88); see also Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368 (2012)(holding that "federal and state courts have concurrent jurisdiction over private suits arising under the TCPA").

### III. Standard of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal for lack of jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be premised on a facial or factual attack. See Cartwright v. Garner, 751

4

F.3d 752, 759 (6th Cir. 2014); <u>Gentek Bldg. Prods., Inc.</u> <u>v. Sherwin-Williams Co.</u>, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack questions the sufficiency of the pleading without disputing the facts alleged in it. <u>See</u> <u>Gentek Bldg. Prods., Inc.</u>, 491 F.3d at 330. A factual attack challenges the factual allegations underlying the assertion of jurisdiction. <u>See</u> <u>United States v. Ritchie</u>, 15 F.3d 592, 598 (6th Cir. 1994).

Dotson does not contest any of the factual allegations in the Counterclaims but argues that the facts Ally alleged are not sufficient to establish subject matter jurisdiction. (<u>See</u> <u>generally</u> ECF No. 14.) Because Dotson's motion is a facial attack, the Court takes the allegations in the Counterclaims as true. <u>See</u> <u>Ritchie</u>, 15 F.3d at 598.

## IV. Legal Standard

Ally's counterclaims do not fall within the Court's original jurisdiction. They do not arise under federal law and do not satisfy the requirements of diversity. <u>See</u> 28 U.S.C. §§ 1331, 1332. To decide the Counterclaims, the Court must have supplemental jurisdiction. <u>See</u> 28 U.S.C. § 1367.

The Sixth Circuit formerly relied on a compulsory/permissive distinction to determine whether a

counterclaim fit within a court's supplemental jurisdiction.[3]
See Maddox v. Kentucky Finance Co., Inc., 736 F.2d 380, 382 (6th
Cir. 1984)("[A] counterclaim is within the ancillary
jurisdiction of the federal district court only if it is a
compulsory counterclaim under Fed. R. Civ. P. 13(a)."); City of
Cleveland v. Cleveland Elec. Illuminating Co., 570 F.2d 123, 126
(6th Cir. 1978). Permissive counterclaims required an
independent jurisdictional basis for supplemental jurisdiction.
See Maddox, 736 F.2d at 383; McCaffrey v. Rex Motor Transp.,
Inc., 672 F.2d 246, 248 (1st Cir. 1982)("Permissive
counterclaims, Fed. R. Civ. P. 13(b), may not be entertained
under a federal court's ancillary jurisdiction unless there is
some independent jurisdictional basis such as a federal question
upon which federal jurisdiction may be founded.").

In 1990, Congress enacted 28 U.S.C. § 1367, which states in
relevant part:

> [I]n any civil action of which the district courts have
> original jurisdiction, the district courts shall have
> supplemental jurisdiction over all other claims that are so
> related to claims in the action within such original
> jurisdiction that they form part of the same case or
> controversy under Article III of the United States
> Constitution.

---

[3] Compulsory counterclaims arise "out of the transaction or occurrence that is
the subject matter of the opposing party's claim" and do "not require adding
another party over whom the court cannot acquire jurisdiction." Fed. R. Civ.
P. 13(a). Permissive counterclaims are any counterclaims that are not
compulsory. Id. at 13(b).

28 U.S.C. § 1367(a). In interpreting this broad language, many courts, including the First, Second, and Seventh Circuits, and district courts in the Sixth Circuit, have abandoned the permissive/compulsory counterclaim distinction. See, e.g., Global NAPs, Inc. v. Verizon New England Inc., 603 F.3d 71, 87 (1st Cir. 2010); Jones v. Ford Motor Credit Co., 358 F.3d 205 (2d Cir. 2004); Channell v. Citicorp Nat. Servs., Inc., 89 F.3d 379 (7th Cir. 1996); Edwards v. Equitable Acceptance Corp., No. 1:14-CV-00888, 2015 WL 3607297, at *3 (N.D. Ohio June 8, 2015)(collecting cases and explaining the change in law). Those courts have concluded that under § 1367(a) a district court has supplemental jurisdiction to hear a permissive counterclaim if it "form[s] a part of the same case or controversy" as the claim over which the court has original jurisdiction. See Riazi v. Ally Fin., Inc., No. 4:17CV1705JCH, 2017 WL 4260847, at *3 (E.D. Mo. Sept. 26, 2017)(elaborating on the legal standards applicable to the distinction between permissive and compulsory counterclaims under § 1367(a)).

The § 1367(a) standard is broader and more encompassing than Federal Rule of Civil Procedure 13(a)'s "arise from the same transaction or occurrence" standard. See Edwards, 2015 WL 3607297, at *3. A leading treatise on federal civil procedure summarizes the movement in the law:

> Interpreting the statutory requirement that additional
> claims and parties must be part of the same case or
> controversy, some courts have held that even if a
> counterclaim is permissive and does not arise out of the
> same transaction and occurrence as the main claim, it
> nonetheless may qualify for supplemental jurisdiction if it
> is found to arise out of facts bearing some relationship to
> the main claim so that it may be deemed part of the same
> controversy. These courts thus are defining the same
> controversy more broadly than Rule 13's "transaction or
> occurrence" standard and conclude that the statute
> authorizes jurisdiction even though non-transactionally
> related Rule 13(b) counterclaims would have been outside
> the traditional assertion of ancillary jurisdiction (the
> predecessor to supplemental jurisdiction).

6 Wright, et al., Federal Practice and Procedure, § 1422, n.7 (3d ed. 2019)(collecting cases).

Although the Sixth Circuit has not directly addressed the permissive/compulsory counterclaim distinction in light of § 1367, it has observed that "[t]he first part of [§ 1367(a)] contains a sweeping grant of supplemental jurisdiction giving courts supplemental jurisdictional over all claims not excluded by the second part [of § 1367(b)]." Olden v. LaFarge Corp., 383 F.3d 495, 504 (6th Cir. 2004). After the enactment of § 1367, the Sixth Circuit cited United Mine Workers v. Gibbs, 383 U.S. 715 (1966) for the proposition that "a federal court can decide a state law claim that forms part of the same 'case or controversy' as a claim over which the court has jurisdiction." See Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254 (6th Cir. 1996), amended on denial of reh'g, No. 95-5120,

1998 WL 117980 (6th Cir. Jan. 15, 1998)(citing <u>Gibbs</u>, 383 U.S. at 726). <u>Musson</u> went on to state that § 1367 "affirmed <u>Gibbs</u>, as interpreted by subsequent federal courts, as the proper measure of federal supplemental jurisdiction" – implying that the case and controversy standard is the new standard for the exercise of supplemental jurisdiction. <u>See</u> <u>id.</u> District courts in the Sixth Circuit addressing situations like the present case have applied the case and controversy standard. <u>See, e.g.</u>, <u>Bates v. Am. Credit Acceptance, LLC</u>, No. 16-12239, 2016 WL 5477429, at *2 (E.D. Mich. Sept. 29, 2016)(collecting cases).

The Sixth Circuit's reasoning is consistent with the Supreme Court's statement in <u>Exxon Mobil</u> that "[n]othing in § 1367 indicates a congressional intent to recognize, preserve or create some meaningful, substantive distinction between the jurisdictional categories we have historically labeled pendent and ancillary." <u>Exxon Mobil Corp. v. Allapattah Services, Inc.</u>, 545 U.S. 546, 559 (2005). Most recently, the Supreme Court reaffirmed the broad grant of supplemental jurisdiction under the case and controversy standard and recognized, in dicta, Congress's clarification of the prior pendent/ancillary jurisdiction distinction. <u>See</u> <u>Artis v. D.C.</u>, 138 S. Ct. 594, 598 (2018)("Section 1367, . . . codifies the court-developed pendent and ancillary jurisdiction doctrines under the label

9

'supplemental jurisdiction.' . . . Section 1367(a) provides, in relevant part, that a district court with original jurisdiction over a claim 'shall have supplemental jurisdiction over all other claims . . . form[ing] part of the same case or controversy.'")(alterations in original)(citing <u>Exxon Mobil Corp.</u>, 545 U.S. at 552–58).

Both parties apply the case and controversy standard in their briefs. Dotson first argues that Ally's claim fails because it lacks a common nucleus of operative fact with his TCPA claim (<u>i.e.</u>, fails § 1367(a)'s case and controversy standard). (<u>See</u> ECF No. 14 at 54.) Dotson then briefly addresses the prior compulsory/permissive distinction and argues that Ally's state law claims are permissive, not compulsory. (<u>See</u> <u>id.</u> at 56.) Dotson appears to concede that the Court has supplemental jurisdiction over permissive counterclaims but argues that the Court should decline to exercise its jurisdiction because of the "substantially predominates" exception in § 1367(c). (<u>See</u> <u>id.</u> at 56-58.)

Ally does not address the compulsory/permissive distinction, but relies on the inapposite case of <u>O'Brien v. Ed Donnelly Enterprises, Inc.</u>, 575 F.3d 567, 581 (6th Cir. 2009), <u>abrogated on other grounds by</u> <u>Campbell-Ewald Co. v. Gomez</u>, 136 S. Ct. 663 (2016), which interprets the § 1367(a) standard as

controlling in a case not involving a counterclaim. (See ECF No. 18 at 85.)

The case or controversy standard is now the basis for analyzing supplemental jurisdiction over counterclaims. See Exxon Mobil Corp., 545 U.S. at 559; Global NAPs, Inc, 603 F.3d at 87; Jones, 358 F.3d at 212-215; Channell, 89 F.3d at 386-87. The test for whether a Court can exercise supplemental jurisdiction over a counterclaim does not depend on whether the original claim and the counterclaim "arise from the same transaction or occurrence," but whether the claims are so related that they "form part of the same case or controversy." See Bates, 2016 WL 5477429, at *2. In the Sixth Circuit, claims form part of the same case or controversy if they "derive from a common nucleus of operative facts." Packard v. Farmers Ins. Co. of Columbus Inc., 423 F. App'x 580, 583 (6th Cir. 2011); Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 209 (6th Cir. 2004); Blakely v. United States, 276 F.3d 853, 861 (6th Cir. 2002).

Section 1367(c) establishes exceptions and gives district courts discretion to decline supplemental jurisdiction in four enumerated circumstances:  "(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has

dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." <u>See</u> 28 U.S.C. § 1367(c).

## V. Analysis

Dotson argues that the Court lacks supplemental jurisdiction over Ally's Counterclaims because they do not arise from "a common nucleus of operative facts." (<u>See</u> ECF No. 14 at 53-56.) Dotson argues alternatively that, if the Court has supplemental jurisdiction over the Counterclaims, it should decline to exercise it because, under § 1367(c)(2)'s discretionary exception, Ally's Counterclaims would "substantially predominate[]" over Dotson's TCPA claim. (<u>See</u> ECF No. 14 at 56-58.); 28 U.S.C. § 1367(c)(2).

Ally argues that: (1) the Court does have supplemental jurisdiction over its Counterclaims (<u>see</u> ECF No. 18 at 86-87); (2) that the Court should not decline supplemental jurisdiction because Ally's Counterclaims would not "substantially predominate[]" over Dotson's TCPA claim (<u>see</u> ECF No. 18 at 87-88); and (3) if the Court lacks supplemental jurisdiction under § 1367, the Court should exercise jurisdiction pursuant to an alternative "defensive set-off" theory under Federal Rule of Civil Procedure 13(b). (<u>See</u> ECF No. 18 at 89-90.)

The Court has supplemental jurisdiction over Ally's Counterclaims, but declines to exercise it because Ally's Counterclaims would substantially predominate over Dotson's action. See 28 U.S.C. § 1367(c)(2).

**A. Common Nucleus of Operative Facts**

Claims form part of the same case or controversy if they "derive from a common nucleus of operative facts." Harper, 392 F.3d at 209. The "nucleus" test is an amorphous standard, but some direction can be found in our precedents. The Sixth Circuit has found the standard met when the "state and federal law claims arise from the same contract, dispute, or transaction." Packard v. Farmers Ins. Co. of Columbus Inc., 423 F. App'x 580, 583 (6th Cir. 2011)(finding standard met when both claims arose from a flood insurance policy)(citing Capital Park Ltd. Dividend Hous. Ass'n v. Jackson, 202 F. App'x 873, 877 (6th Cir. 2006)(same with housing contract)); see Blakely, 276 F.3d at 861-62 (same with consent judgment); Transcon. Leasing, Inc. v. Michigan Nat. Bank of Detroit, 738 F.2d 163, 166 (6th Cir. 1984)(same with banking loan).

Other circuits have found the standard satisfied when both claims rely on the facts of the attempted debt collection of defaulted auto loans. See Jones, 358 F.3d at 214 ("Both the ECOA claim and the debt collection claims originate from the

13

Plaintiffs' decisions to purchase Ford cars."); <u>Channell</u>, 89 F.3d at 386 (finding the case and controversy standard met when "the parties, the lease, [and] the clause," in a federal claim and auto loan contract counterclaim "were constant"); <u>cf.</u> <u>Graf v. Pinnacle Asset Grp., LLC</u>, No. CIV. 14-1822 SRN/SER, 2015 WL 632180, at *5 (D. Minn. Feb. 12, 2015)(collecting cases holding that "a counterclaim for the underlying debt forms part of the same case or controversy as a plaintiff's claims for abusive debt collection practices under the FDCPA, because both claims are related to a single debt alleged to have been incurred by the plaintiff").

Here, the facts surrounding the execution and alleged breach of the Contract relate to Dotson's TCPA claim. The parties' claims arise from the same contract and litigation of their claims would "involve factual overlap and many of the same witnesses." <u>Blakely</u>, 276 F.3d at 862. Under the TCPA, Dotson must prove: (1) that Ally called Dotson using an automatic telephone dialing system (including a predictive dialer) or artificial or pre-recorded voice; (2) that the calls were placed to Dotson's cellular telephone; (3) that the calls were not made for "emergency purposes"; and (4) that the calls were made without Dotson's prior express consent. <u>See</u> 47 U.S.C. § 227(b)(1)(A)(iii). A clause in the Contract is directly

relevant to one of these elements: that the calls were made without Dotson's prior consent. (See ECF No. 13-1 at 47); supra, at 2. Dotson might also cite the relevant clause to prove two of the other elements of his TCPA claim: (1) that he was called on his cell phone (2) by an automated dialing system. The purpose of the calls – allegedly to collect on Dotson's debt – is tangentially relevant to the third element of the TCPA claim: that the calls were made for nonemergency purposes. The facts underlying Ally's breach of contract and repossession claims relate to Dotson's TCPA claim. Without a breach of the Contract, Ally would not have called Dotson to collect under the terms of the Contract, resulting in the alleged violation of the TCPA.

District courts have reached different conclusions about whether the common nucleus standard is met in cases with similar fact patterns and procedural history. See, e.g., Ammons v. Ally Fin., Inc., 305 F. Supp. 3d 818, 822-23 & n.2 (M.D. Tenn. 2018)(collecting cases finding both ways). Many of the cases finding that TCPA and breach of contract claims do not share operative facts compare the elements required to prove each claim and conclude that, because each claim requires different evidence, the claims do not arise from a common nucleus of operative facts. See Ammons, 305 F. Supp. 3d at 823 ("[B]oth

parties would be required to allege facts and produce evidence that is chronologically separate and unique to each cause of action. Ammons's TCPA claim and Ally's Counterclaim can succeed and do not share a common nucleus of operative fact dependent on the other."); Vecchia v. Ally Fin., Inc., No. 8:17-CV-2977-T-23AAS, 2018 WL 907045, at *1 (M.D. Fla. Feb. 15, 2018) (M. D. Fla. Feb. 15, 2018)("Although the TCPA claim and the counterclaims result generally from [plaintiff's] alleged failure to pay the loan, the TCPA claim and the counterclaims largely require different evidence . . . . In sum, the counterclaims' superficial or tangential relation to the TCPA claim fails to establish supplemental jurisdiction."); Ramsey v. Gen. Motors Fin. Co., No. 3-15-0827, 2015 WL 6396000, at *2 (M.D. Tenn. Oct. 22, 2015)("The proof needed to establish Defendant's violation of the TCPA (e.g., calls made, without express consent, with an automatic telephone dialing system or an artificial or prerecorded voice) is different from the proof needed to establish Plaintiff's breach of the Contract (e.g., existence of a valid contract, default, damages).").

That claims require different evidence or proof does not mean they cannot or do not derive from a common nucleus of operative facts. See Packard, 423 F. App'x at 583. Many complaints raise multiple claims that arise from the same

operative facts but require proof of distinct elements. It is common practice to plead in the alternative, stating different causes of action that require different evidence or proof, but that arise from the same operative facts. Here, Ally's Counterclaims share a common nucleus of operative facts with Dotson's TCPA claim. See Edwards, 2015 WL 3607297, at *4 ("The common factual connection between the claims is the underlying debt and the numerous phone calls placed by [defendant]. [Plaintiff] contends that [defendant]'s attempts to contact him on his cell phone with regard to the alleged debt violated the TCPA, while [defendant] maintains that it is owed the unpaid balance of the debt and that its calls were justified. The claims are sufficiently related to form part of the same case or controversy."). The Court has supplemental jurisdiction over Ally's Counterclaims.

**B. Substantially Predominates**

Although this Court has supplemental jurisdiction over Ally's Counterclaims, it may decline to exercise that jurisdiction in one of four circumstances: "(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original

jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

The first, third, and fourth circumstances do not apply here. (See ECF No. 14 at 57; No. 18 at 87.) The parties disagree about the second circumstance, i.e., whether Ally's Counterclaims would substantially predominate over Dotson's TCPA claim. They would.

"Although there appears to be no definitive test to determine whether state law predominates over federal claims, courts have considered such factors as whether they outnumber the federal law claims; whether the claims are distinct; and whether [the] state-law claims involve proof that is not needed to establish the federal law claims." Williamson v. Recovery Ltd. P'ship, No. C2-06-292, 2009 WL 649841, at *9 (S.D. Ohio Mar. 11, 2009)(citing Szendrey-Ramos v. First BanCorp, 512 F. Supp. 2d 81, 86 (D.P.R. 2007)(collecting cases)); see also Sneed v. Wireless PCS Ohio #1, LLC, No. 1:16CV1875, 2017 WL 879591, at *3 (N.D. Ohio Mar. 6, 2017); Reed v. Pape Mgmt. Inc., No. 1:16cv305, 2016 WL 5405248, at *4 (N.D. Ohio Sept. 28, 2016). Courts consider whether the state issues would substantially predominate over the federal claims "in terms of proof, of the

scope of the issues raised, or of the comprehensiveness of the remedy sought." Gibbs, 383 U.S. at 726–27.

Although the Contract underlying the Counterclaims will probably be relevant to the TCPA claim to the extent that a clause in the Contract may establish prior consent to the telephone calls, the main evidence relevant to the TCPA claim will likely consist of records and testimony about the number of calls received and the use of the automatic dialing system, evidence that would be of no relevance to the breach-of-contract counterclaim. See Ginwright v. Exeter Fin. Corp., No. CV TDC-16-0565, 2016 WL 5867443, at *3 (D. Md. Oct. 6, 2016)(finding the same in a similar situation). Ally's Counterclaims, which contain no allegations about telephone calls or an automatic dialing system, will rely primarily on evidence "that is not needed to establish[] the [TCPA] claim[,]" Williamson, 2009 WL 649841, at *9, such as proof of Dotson's failure to make car payments.[4] See Ginwright, 2016 WL 5867443, at *3. Any evidence that Dotson "totaled" the Vehicle or evidence establishing potential third-party liability for the debt would not be relevant to the TCPA claim.

---

[4] Under Tennessee state law, to prove a breach of contract claim, Ally must prove: "(1) the existence of an enforceable contract, (2) non-performance amounting to a breach of the contract, and (3) damages caused by the breached contract." Nw. Tennessee Motorsports Park, LLC v. Tennessee Asphalt Co., 410 S.W.3d 810, 816–17 (Tenn. Ct. App. 2011)(citing ARC LifeMed, Inc. v. AMC-Tennessee, Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

The comprehensiveness of the remedy sought in each claim also cuts against exercising supplemental jurisdiction. Both parties seek damages, but Ally also seeks the equitable remedy of repossession. (ECF No. 13 at 44-45.) Potential enforcement of that remedy would require inquiry into matters distinct from the TCPA claim for damages, such as who currently possesses the Vehicle or if it was indeed "totaled."

Public policy concerns support declining jurisdiction. Discretion under § 1367(c) "[d]epend[s] on a host of factors, . . . including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims . . . ." _City of Chicago v. Int'l Coll. of Surgeons_, 522 U.S. 156, 173 (1997). The Court should consider "the values of judicial economy, convenience, fairness, and comity . . . ." _Carnegie-Mellon Univ. v. Cohill_, 484 U.S. 343, 350 (1988).

The TCPA claim implicates the enforcement of federal policy and federal statutory law. The purpose of the TCPA is to give those harmed a remedy regardless of the purpose behind the calls. _See generally_ _In re Rules and Regulations Implementing the TCPA of 1991_, 18 F.C.C.R. 14010, 14018 (July 3, 2003). The Counterclaims rely on an inquiry into a private contract that is

governed by state law and that has no broader public policy purpose or implications. Comity also supports declining jurisdiction. Nothing prevents Ally from suing Dotson in state court. A state court judgement may be used as a set-off to any judgment Dotson obtains in this case.

As other courts have recognized, there is a potential "chilling effect" from allowing a debt collector defendant, that is being sued for violating a federal law regulating its debt collection methods, to collect a debt in the same federal action. See Ammons, 305 F. Supp. 3d at 824 (collecting cases); see also Riazi, 2017 WL 4260847, at *6 (explaining purpose behind the TCPA and how TCPA claims could be "chilled"); cf. Leatherwood v. Universal Bus. Serv. Co., 115 F.R.D. 48, 50 (W.D.N.Y. 1987)(explaining potential chilling effect of allowing a debt collection counterclaim in a FDCPA action).

The majority of courts that have addressed the "substantially predominates" issue in circumstances like those here have declined to exercise supplemental jurisdiction. See, e.g., Vernell v. Nuvell Credit Co. LLC, No. 215CV674FTM38MRM, 2016 WL 931104, at *3 (M.D. Fla. Mar. 11, 2016)(finding in a case with similar facts and procedural history that there was a common nucleus, but declining to exercise jurisdiction because the state law contract claim would substantially predominate

over the TCPA claim); Dayhoff v. Wells Fargo Home Morg., Inc., No. 6:13-CV-1132-ORL-37, 2014 WL 466151, at *2 (M.D. Fla. Feb. 5, 2014)(same); cf. Campos v. W. Dental Servs., Inc., 404 F. Supp. 2d 1164, 1169 (N.D. Cal. 2005)(same but under the FDCPA). Their reasoning is persuasive.[5] Retaining jurisdiction here would allow "a federal tail to wag what is in substance a state dog." See Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 789 (3d Cir. 1995).

For the reasons stated above, the Court declines to exercise supplemental jurisdiction over Ally's Counterclaims. See 28 U.S.C. § 1367(c)(2).

### C. Defensive Set-off

Ally argues that its Counterclaims constitute a "defensive set-off."[6] (ECF No. 18 at 89-90.) Ally contends that the Court may exercise supplemental jurisdiction over its Counterclaims on that basis even absent other independent jurisdictional grounds. (ECF No. 18 at 89-90.); see William A. Fletcher, "Common Nucleus of Operative Fact" and Defensive Set-Off: Beyond the Gibbs Test,

---

[5] The two cases that held that a state law breach of contract claim would not predominate over a TCPA claim did so in conclusory fashion. See Bates, 2016 WL 5477429, at *3-4; Edwards, 2015 WL 3607297, at *4 ("Furthermore, the Court concludes that none of the reasons for declining to exercise supplemental jurisdiction as described in § 1367(c) apply here. The defendant's counterclaims do not raise novel or complex issues of State law, nor do they predominate over [the plaintiff's] TCPA claim.").

[6] "Defensive set-off" is defined as a "counterclaim asserted by the defendant to reduce the size of the plaintiff's judgment." William A. Fletcher, "Common Nucleus of Operative Fact" and Defensive Set-Off: Beyond the Gibbs Test, 74 Ind. L.J. 171, 172 (1998).

74 Ind. L.J. 171, 171–72 (1998)(discussing this legal theory); 1 James W. Moore & Joseph Friedman, Moore's Federal Practice § 13.03, at 696 (1938)(first promulgating this theory).

Before the enactment of § 1367, a few courts recognized supplemental jurisdiction over defensive set-off claims under Federal Rule of Civil Procedure 13(b) as an exception to the general rule that permissive counterclaims required an independent jurisdictional basis. See 6 Wright, et al., Federal Practice and Procedure, § 1422, n.4 (3d ed. 2019)(collecting cases and explaining theory). Their principal justifications were judicial efficiency and procedural fairness. See Fletcher, "Common Nucleus of Operative Fact" and Defensive Set-Off: Beyond the Gibbs Test, 74 Ind. L.J. at 172 ("The utility and essential fairness of defensive set-off is clear. If a plaintiff can enforce a monetary judgment to its full extent without deducting an existing liquidated debt or judgment owed to the defendant, he or she has a significant and undeserved procedural advantage.").

Since the implementation of § 1367 abolished the compulsory/permissive counterclaim distinction, see supra, at 5-11, this judicially-created "exception" is no longer viable. It has been superseded by the broader case and controversy standard at § 1367. See Channell, 89 F.3d at 386 (allowing a defensive

23

set-off claim only because it fell "within the outer boundary" of the case or controversy standard). Even if jurisdiction were conferred under the defensive set-off theory, it would be subject to the Court's discretionary authority to decline jurisdiction under § 1367(c). The Court has declined jurisdiction.

The Court has no independent ground of jurisdiction under the defensive set-off theory.[7]

## VI. Conclusion

For the foregoing reasons, the Dotson's Motion to Dismiss Counterclaim is GRANTED. Ally's Counterclaims are DISMISSED.

So ordered this 7th day of November, 2019.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

---

[7] It is doubtful that Ally's detinue/repossession claim would benefit from the defensive set-off theory. Detinue/repossession is an equitable remedy and defensive set-off appears to apply only to legal remedies. <u>See</u> Fletcher, <u>"Common Nucleus of Operative Fact" and Defensive Set-Off: Beyond the Gibbs Test</u>, 74 Ind. L.J. at 172.